REDMON v. CAPLE.

No. 5893.

Court of Civil Appeals of Texas. Texarkana.
Jan. 29, 1942.

Rehearing Denied Feb. 19, 1942.

Jones & Jones and C. A. Brian, all of Marshall, for appellant.

H. P. Smead, of Longview, for appellee.

WILLIAMS, Justice.

In this action for damages, growing out of an alleged assault by J. H. Caple, defendant below, upon Joe H. Redmon, plaintiff below, the court, based upon jury findings, entered judgment which denied plaintiff a recovery. The points presented involve the refusal of the court to enter judgment for plaintiff notwithstanding the jury's answer to issue No. 12; and, subject to above, the failure of the court to declare a mistrial on account of an alleged irreconcilable conflict in the jury's findings to issues No. 12 and No. 14.

The court instructed the jury:

"By the term 'assault' as used in this charge, is meant any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with an ability to commit a battery."

"By the term 'battery' is meant the least touching of another's person wilfully and in anger, by the use of any part of the body of the person committing the offense, as of the hand, foot, head, or by the use of any inanimate object, as a stick, knife or anything else capable of inflicting the slightest injury; or by any means used, as spitting in the face or otherwise, which is capable of inflicting an injury; and may be committed though the person actually injured thereby was not the person intended to be injured."

In response to issue No. 1, the jury found "that the action of defendant, Caples, in firing the second shot on the occasion in question constituted an assault upon the plaintiff;" and to No. 2, "That the firing of the second shot on the occasion in question was a proximate cause of plaintiff's injury."

The court instructed the jury: "In connection with Special Issues Nos. 12, 13 and 14, you are instructed that defendant had the right to use such force as was necessary under the circumstances to protect his person or property, and to prevent any intrusion upon the lawful possession of his property, but that he did not have the right to use any more force than was necessary in the light of the attendant circumstances."

In response to special issue No. 12 the jury found: "That defendant fired the second shot on the occasion in question in preventing or interrupting an intrusion upon the lawful possession of his property"; to No. 13, that defendant did not fire the second shot on the occasion in question "in the necessary defense of his person"; and to No. 14, that defendant did not fire the second shot in question "in the necessary defense of his property."

On the occasion in question, and for years prior thereto, defendant used the ground floor of a two-story building in his operation of a wholesale tobacco business. He and his family occupied the second floor as their home. A front porch on the second floor adjoined his living room. An outside stairway led in the rear to a small anteroom which opened into his kitchen. George Redmon, a brother of plaintiff, who had come up the stairway to an entrance door of the anteroom, according to testimony offered by defendant, was demanding admittance and defendant's wife had ordered him to leave, when defendant fired his shotgun the first time from inside his house through the kitchen window. Defendant then went to the front porch, amidst the screams of his wife, and seeing an automobile parked off the highway and on defendant's premises within a few feet of his front porch, fired the second shot. According to the defendant's testimony, he fired the second shot into the ground, and claims he shot both times only to frighten the men away. Plaintiff claims that he had crossed the concrete paved highway which ran in front of the building and was on the dirt, when the second shot was fired, and the

shot kicked up gravel around his feet and caused him to move faster. In getting away, plaintiff stumbled into a ditch after he crossed the highway and sustained leg injuries for which he sued. Defendant admits that he saw plaintiff when the latter got out of the car parked there and saw him go across the road in a trot when he fired the second time, but contends that he could not see or ascertain the whereabouts of George Redmon and Jack Polston, a brother-in-law of the Redmons; that he did not know but that these two were around the house and might shoot him; that he fired to scare them away; and that he fired the second time because he was scared and excited. This shooting occurred, according to defendant, around 11:20 p. m.; probably an hour earlier under plaintiff's testimony. George Redmon was in the employ of defendant as a salesman. He operated a truck owned by defendant in delivery of merchandise sold to the trade by the former. The evidence reflects that George Redmon had called at defendant's place about 8:45 p. m. on the date of the shooting for the purpose of being checked out of his service. George Redmon was then informed that defendant was making a delivery at El Patio, a night club. Later, plaintiff, George Redmon and Jack Polston met up with defendant at this club, at which time and place defendant claims a knife-play and threats were made, resulting in peace officers being called to the club. Later the same night, the shooting took place as above set out. The evidence reflects that plaintiff and his brother were under the influence of intoxicating liquor. In his brief appellant concedes "that the testimony from defendant's viewpoint supports the conclusion that defendant on the same night and prior to the shooting had trouble with plaintiff, his brother George, and brother-in-law, Jack Polston"; and defendant's testimony would have warranted a jury in believing "the defendant's state of mind was such that he was afraid of further trouble with these three men."

■ Plaintiff takes the position that the jury's finding to No. 12 would not defeat his right to recover premised upon findings to issues No. 1 and No. 2 With this we do not agree. In his petition, plaintiff pleaded that he "without fault on his part was unlawfully assaulted"; that defendant "voluntarily, maliciously and without probable cause, fired such shotgun"; and said assault was made "unlawfully, maliciously

and with probable intent to kill * * *." Defendant entered a general denial, charged plaintiff and his companions with threats to do defendant bodily harm; their trespass upon his premises late at night, and pleaded that defendant had acted in defense of his person and property. Issue No. 1 and the definitions of assault and battery given in connection therewith in the charge (there being no other instructions given with respect to issue No. 1) did not submit the defensive right to make an assault as provided in Section 4 of Article 1142, P.C., which reads: "Violence used to the person does not amount to an assault or battery in the following cases: * * * 4. In preventing or interrupting an intrusion upon the lawful possession of property." Issue No. 12 did. The jury's finding to issue No. 12 that the assault was made by defendant in preventing or interrupting an intrusion upon the lawful possession of property would defeat plaintiff's right of recovery. Section 4, supra. Rules of law covering the liability of the owner of property for an assault in defending it against aggression are applicable alike to a civil action for damages and to a criminal prosecution, with the exception of the rule of evidence, which, in a criminal cause, gives the defendant the benefit of a reasonable doubt. 25 A.L.R. p. 537, and authorities there collated; 6 C.J.S., Assault and Battery, § 18, p. 810; 4 Am.Jur. p. 188; McMurrey Corp. v. Yawn, Tex.Civ. App., 143 S.W.2d 664; Koons v. Rook, Tex.Com.App., 295 S.W. 592; Black v. State, 65 Tex.Cr.R. 336, 145 S.W. 944; Richardson v. State, 7 Tex.App. 486; Petty v. State, 126 Tex.Cr.R. 185, 70 S.W.2d 718.

■■ Under point C, appellant affirms that the jury's finding (issue No. 12) that defendant fired the second shot to prevent or interrupt an intrusion upon the lawful possession of his property is in irreconcilable conflict with the jury's finding (issue No. 14) that he did not fire the second shot in the necessary defense of his property. Conscious of the duty of a court to reconcile apparent conflicts in jury findings, if such reconciliation can be reasonably accomplished, 41 Tex.Jur. pp. 1224, 1225, more fully discussed in Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151, it is thought that the action of the court in not declaring a mistrial does not present error. At the time defendant fired the second shot, neither plaintiff nor his brother was then attacking defendant's property or making

any effort to destroy or damage it. In view of such facts, it would not be without reason to interpret the jury's finding to No. 14 that they believed the defendant did not fire the second shot in the necessary defense of his property. And, further, it is not without reason that the jury answered No. 12 in the affirmative in view of the evidence that defendant did not aim at any one but, as claimed by him, shot to scare plaintiff's associates off and away from his premises; that is, to interrupt their intrusion upon his lawful possession of his premises at a late hour in the night.

We deem it unnecessary to determine if in issue No. 14 the court attempted to submit the provisions of Article 1142, P.C., Sec. 6 thereof, which reads: "Violence used to the person does not amount to an assault * * * [when done] in self defense, or in defense of another against unlawful violence offered to his person or property"; or if in such issue the court sought to submit Articles 1224 and 1227, P.C., which provide that violence to the extent of taking life may be used under certain circumstances in the protection of one's property against any other unlawful and violent attack. An affirmative answer by the jury to an issue submitting Section 4 of Article 1142 or any other section of Article 1142 or that of Article 1224, provided the facts supported such finding, would present a bar to plaintiff's right of recovery based on the finding to issue No. 1.

Under the record as presented, we are not called upon to review the court's definition of "battery" or other instructions of the court.

The judgment is affirmed.

### On Motion for Rehearing.

At the request of appellant, the following additional facts are found: After the firing of the first shot, the defendant went upon the front porch of his home, above his store building, and then saw an automobile parked immediately adjacent to his building. He did not see any one inside the car, but directed two or three times that if any one were in the car, for him to get out. Plaintiff then got out of the car and went west about fifteen feet and turned off, proceeding diagonally across the highway. Plaintiff never said a word to the defendant from the time he left the car until defendant fired the shot. Plaintiff went into the street at a fast walk, got halfway, or about to the center line of the concrete, at which point he was approximately sixty feet from the point where defendant stood on his porch. Plaintiff had his back to defendant. Defendant then fired his gun, and plaintiff speeded up to the point of running.

Appellant insists that the jury's finding to issue No. 12 was "entirely without evidence, is unsupported by any competent evidence, and should be ignored." Defendant was in his home at the time he fired the second shot. Plaintiff's brother had just prior thereto attempted to gain entrance at the kitchen door. At the front, an automobile was parked on defendant's premises immediately adjacent to his building. Plaintiff was in this car. He had failed to answer when spoken to. Appellant concedes that the evidence viewed from defendant's standpoint would warrant a jury in believing the "defendant's state of mind was such that he was afraid of further trouble with the three men, namely, plaintiff, his brother-in-law and his brother." Defendant did not see plaintiff's brother. Defendant did not know what this brother was doing or where he was. The automobile was still there, and it was night. Under the facts and circumstances surrounding this occurrence, set out in the original petition and including the additional findings of fact, it is thought that the jury's answer to No. 12, that defendant fired the second shot in preventing or interrupting an intrusion upon the lawful possession of his property, is not without support in the evidence. McMurrey Corp. v. Yawn, supra; Koons v. Rook, supra; Petty v. State, supra; Black v. State, supra; Richardson v. State, supra; Barron v. State, 23 Tex.App. 462, 5 S.W. 237.

The motion for rehearing is overruled.