Craig GILLILAND, Jr., Appellant,

v.

PON LIP CHEW et al., Appellees.

No. 5626.

Court of Civil Appeals of Texas.

El Paso.

July 15, 1964

Rehearings Denied Aug. 26, 1964.

Gerald B. Shifrin, Samuel Wasaff, El Paso, for appellant.

John B. Luscombe, Jr., Wayne Windle, Jr., Wellington Chew, El Paso, Harris & Ball, Arlington, for appellees.

CLAYTON, Justice.

Appellee Pon Lip Chew sued appellant Craig Gilliland, Jr., and Rio Grande Produce Company, of which Gilliland was an officer, for damages for personal injuries suffered by the former in connection with an alleged assault and battery committed by Gilliland upon Chew. Based upon jury answers to special issues, judgment was entered in favor of Chew. In so far as issues involved in the determination of this cause on appeal are concerned, Gilliland is the sole appellant.

Gilliland's defense to the suit was, in part, that on the occasion in question he was acting to prevent and interrupt an intrusion upon the lawful possession of the property of his employer, Rio Grande Produce Company, and in defense of such property he used against Chew only such force as was necessary to effect such purpose.

In its charge to the jury the trial court gave the following "explanations, instructions, and definitions", among others:

"The use of any unlawful violence upon the person of another, with intent to injure, whatever be the means or degree of violence used, is an assault and battery. When an injury is caused by violence to the person, then intent to injure is presumed and it rests with the person inflicting the injury to show the accident or innocent intention.

"Violence used to the person of another does not amount to an assault or battery when made by one to protect property under his care and to prevent any intrusion upon the lawful possession of such property, provided in so doing no more force is used than necessary under the attending circumstances.

\* \* \* \* \* \*

"The word malice as used in this Charge means knowingly and wilfully doing an act, without just cause, excuse or provocation, which the party knows to be unlawful, and with intent to injure another."

Special Issue No. 1 was worded as follows:

## "QUESTION NO. 1

"Do you find from a preponderance of the evidence that on or about the tenth day of May, 1961, the Defendant, Craig Gilliland, Jr., did commit an assault and battery upon the Plaintiff, Pon Lip Chew? Answer 'yes' or 'no'."

The jury answered "Yes", and in answer to Special Issue No. 2 the jury found that Chew suffered injury to his person as a proximate result of such assault and battery.

In answer to Special Issue No. 7 the jury found that Gilliland was not actuated by malice in making the assault and battery upon Chew, which, under the trial court's definition of malice, was in effect a finding that Gilliland had not acted knowingly and willfully, without just cause, excuse or provocation, knowing such act to be unlawful, and with intent to injure Chew.

Special Issue No. 12 inquired whether, at such time and place, Gilliland was acting in defense of the property of the Rio Grande Produce Company, to which the jury answered "Yes". Special Issue No. 13 asked the jury whether Gilliland did not use more force than reasonably appeared to him to be necessary under the circumstances in defense of the property of the Rio Grande Produce Company, if the jury had found that he acted in such defense of such property, to which the jury answered "He did not use more force".

Upon this verdict having been brought in by the jury, the trial court gave the follow-

ing written, signed instruction to the jury, over Gilliland's objections:

"Ladies and Gentlemen of the Jury:
The Court cannot receive your verdict on account of a conflict of findings. Your answer to question No. 1 conflicts with your answer to question No. 12 & 13. You will therefore return to the Jury room & deliberate further of your Verdict."

Gilliland's objections as filed with the court and overruled are as follows:

"To the Court:
Def. Gilliland objects to courts instruction as it tells the jury the effect of their answers to the issues involved and amounts to an improper comment upon the issues and evidence in this case. That there is no conflict and a verdict for the defendant and verdict should be received."

After the jury had been given the above-quoted instruction by the court and had deliberated about an hour longer, Gilliland moved the court for a mistrial because the jury was in irreconcilable conflict and for the reasons stated in the objections to the court's instructions to the jury on conflicts as being an improper comment. A short while later Chew moved the court for a mistrial "for the reason that the instruction to the jury concerning a conflict between question 1 and 12 and 13 amounts to a comment upon the evidence and advises the jury of the effect of its answer. Wherefore Plaintiff moves judgment". The trial court overruled both motions. After a further period of deliberation the jury again returned its verdict into court. It was the same as in its original form except that the "Yes" answer to Special Issue No. 12 was stricken out and the word "No" substituted therefor, and in Special Issue No. 13. the words "He did not use more force" were stricken out since the answer to this issue was conditioned upon an affirmative answer to Special Issue No. 12.

The verdict, so revised, was accepted by the court over renewed objections of Gilliland, whose objections and exceptions were duly preserved in the record. Gilliland's motions for judgment on the verdict, judgment N.O.V. and for new trial were overruled and judgment entered for Chew against Gilliland.

Gilliland presents sixteen points of error, the first seven of which are grouped together under the heading "Errors occurring in submission of case". The first point of error relates to the trial court's ruling that there existed a conflict in the jury's answer to Special Issue No. 1 and the original answers to Special Issues Nos. 12 and 13, the contention being that these answers do not constitute a conflict but amount to an exoneration of Gilliland.

▉ If, to the trial court, there did appear to be some conflict in the jury's findings on the stated issues, it was his duty to construe the answers as not irreconcilably conflicting if there was any reasonable basis or explanation upon which they might be reconciled. Edwards v. Houston Transit Company, 342 S.W.2d 787 (Civ.App., 1960; Ref., N.R.E.), citing cases and quoting from Pruitt v. General Ins. Corp., 265 S.W.2d 908 (Civ.App., 1954; Ref., N.R.E.). Also Bragg v. Hughes, 53 S.W.2d 151 (Civ. App., 1932; n. w. h.) ; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97 (Com.App., 1939; adopt. op.), and many other authorities. The Supreme Court in Traywick v. Goodrich, 364 S.W.2d 190 (1963) approved the holding of these authorities and held:

"Where there is no irreconcilable conflict in the jury's findings it is the ministerial duty of the Judge to enter a judgment on the verdict and the matter involves no judicial or discretionary powers."

▉ Was there here an irreconcilable conflict in the jury's findings on the stated issues? We are of the opinion that there was not. It seems readily conceivable that

while the jury, by its answer to Special Issue No. 1, found that there was an assault and battery, in its generally accepted meaning, committed by *Gilliland* upon *Chew*, it was not an *actionable* assault and battery because of the defensive elements found by the jury to have been existent by their answers to Special Issues 12 and 13. This construction seems to be borne out by these answers taken in conjunction with the jury's answer to the "malice" factor in Special Issue No. 7 (the answer to which issue was conditioned upon an affirmative answer to Special Issue No. 1); i. e., that Gilliland had not acted knowingly and willfully, *without just cause, excuse or provocation* in committing the assault and battery upon Chew, but that Gilliland was acting in defense of property and in so doing did not use more force than reasonably appeared to him to be necessary under the circumstances. Construed in this manner, the jury's answers are not conflicting but constitute, as Gilliland claims, an exoneration of Gilliland. We therefore feel that it was error for the court not to so construe (and thus reconcile) the answers of the jury, but instead, to send the matter back for further deliberation by the jury.

◼◼ It is to be observed that the trial court, in its "explanations, instructions and definitions", when defining assault and battery, has used substantially the wording of parts of two articles of the Vernon's Ann. Texas Penal Code: Article 1138, entitled "Assault and Battery", which begins with the words "The use of any *unlawful* violence upon the person of another" (emphasis supplied), followed by some of the wording of the defensive elements set out in Article 1142, entitled "*Lawful* violence" (emphasis supplied). It is believed that had the titles of these two articles been used in the court's definitions, they would have served to more clearly distinguish for the jury the difference between the unlawful violence which constitutes an actionable assault and battery and the lawful violence which is not actionable when used in the protection of, or to prevent an intrusion upon, property.

Submission of the definitions and special issues in this manner, however, would probably still have given rise to the complaint that Chew makes in the instant case; i. e., that the court should not have submitted Special Issues 12 and 13 for the reason that these issues had been previously submitted in Special Issue 1 and the definition by the court of assault and battery. But we believe the court felt, and properly so, that it was incumbent upon him to have specific findings upon the defensive issues raised by the pleadings and the evidence and as represented by Special Issues 12 and 13. If such be the case, then the trial court should have either directed its instruction on defensive issues to Special Issues 12 and 13, to which it applied, as was done by Redmon v. Caple, 159 S.W.2d 210 (Civ.App., 1942; Ref., Want Merit) ; or better still, it should have omitted altogether any definition of lawful violence as embodied in Article 1142 of the Penal Code and applied this law to the jury's findings in response to Issues 12 and 13.

◼ Under the present state of the record, with the defensive issues set out in the court's original charge in the manner in which they were set out, when the case was sent back to the jury by the trial court the former had no alternative but to revise its answers so as to eliminate what had been termed by the court a "conflict". This they did, and the court was then in effect confronted by two separate verdicts which could not possibly be reconciled, nor could judgment be rendered on either verdict for one party without doing a distinct injustice to the other. In such circumstances we feel that we are not bound to render this case as suggested under the facts of the Traywick case, but to remand the matter for another trial. This requires us to touch on other points of error raised by Gilliland.

◼ The above discussion relates to all of the first seven points with the exception of the third and seventh. Point of Error No. Three complains of the action of the court in overruling both Gilliland's and

Chew's motions for mistrial on the ground that the court's instruction to the jury that the answers to Question 1 and to Questions 12 and 13 were conflicting did, in fact, advise the jury of the effect of its answers. This contention seems at variance with the Supreme Court's decision in Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 236, in which the following statement was given by the trial court to the jury: "Gentlemen, I am going to give you the Charge and Answer Sheet and ask you to see if you can reconcile Issues No. 5 and No. 12". After the statement the jury changed its answer to one of the issues. The contention in the cited case seemed to be, not whether the statement of the court instructed the jury as to the effect of its answers, but that the statement was erroneous because it was orally given. The Court of Civil Appeals reversed and remanded the case because the oral statement was violative of Rule 295, Texas Rules of Civil Procedure, by not having been in writing. The Supreme Court held that the mere fact that the statement was oral was not a cause for reversal of the case unless the failure to give the instruction in writing was reasonably calculated to, and probably did, cause the rendition of an improper judgment under Rule 434, T.R.C.P. However, the reversal and remand of the case was approved because *there was no conflict in the verdict to be reconciled,* and the trial court's action in the giving of the instruction was error which caused the rendition of an improper judgment and hence was reversible error for the reason stated. While the cited case does not directly require the overruling of Point of Error No. Three, it is persuasive, and we have been unable to find other authority on the matter. Also, the Denbow case contains a holding which supports the disposition we make of this case. Point No. Three is overruled.

In the seventh point, Gilliland cites error of the court in failing to submit an issue inquiring whether police officers at the scene inflicted the injuries complained of by Chew. Upon a new trial the court will determine whether the pleadings and evidence warrant such a submission. This point is overruled.

The eighth and ninth points of error deal with matters which in no way alter the disposition of this case, and are overruled.

The tenth and eleventh points of error relate to the trial court's action in granting judgment to Chew based upon the revised verdict of the jury. These points, in all likelihood, will not arise upon a new trial and need no discussion. Also, points twelve through sixteen relate to the awarding of damages in the judgment and will be resolved upon the basis of the testimony and verdict before the court in a new trial, and do not require discussion here.

It is the opinion of this court that upon the facts and circumstances above related, the judgment of the trial court must be reversed, and it is hereby reversed and remanded for a new trial.

FRASER, C. J., not participating.